| | |
|---|---|
| HENRY ALBERT JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   **MEMORANDUM OF** |
| | )   **DECISION AND ORDER** |
| | ) |
| AMY JENKINS, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint [Doc. 1], see 28 U.S.C. §§ 1915(e) and 1915A, and Plaintiff's recent filings [Docs. 6, 7]. Plaintiff is proceeding in forma pauperis. [Docs. 2, 5].

## I.    BACKGROUND

Pro se Plaintiff Henry Albert Jones ("Plaintiff") is a prisoner of the State of North Carolina currently housed at Alexander Correctional Institution ("Alexander") in Taylorsville, North Carolina.[1] On June 17, 2026, he filed this action against Defendants: (1) Amy Jenkins, Associate Warden of Programs at Alexander; (2) FNU Farrish, Unit Supervisor at Alexander; (3) FNU Rohlfing, Program Supervisor at Alexander; and (4) an "unknow[n]" Mental Health Social Worker at Alexander. [Doc. 1]. Plaintiff sues the Defendants in their individual and official capacities. [Id. at 2-3].

Plaintiff appears to allege as follows. Plaintiff has five pinched nerves, multiple sclerosis, vertebra that are fusing together and leaking spinal fluid, and neuropathy in his legs. [Id. at 5]. He

---

[1] According to the NCDAC inmate locator, Plaintiff was convicted of second-degree murder on November 13, 2025. [webapps.doc.state.nc.us/opi/offendersearch.do?method_view (last visited 7/10/2026)]. He was initially received at Central Prison and transferred to Alexander on March 30, 2026.

is totally disabled and has been trying to get approved for various accommodations while incarcerated to improve his living conditions. [Id.]. Specifically, Plaintiff's "short toilet" and thin bed mat are causing Plaintiff increased pain. [Id.].

On February 13, 2026, while incarcerated at Central Prison in Raleigh, North Carolina, Plaintiff submitted his first DC-746 Request for Reasonable Accommodation ("DC-746")[2] seeking accommodations for his disabilities. [Doc. 1-5]. This form got lost. [Id.]. On March 24, 2026, Plaintiff filled out a second DC-746, which he handed to an official at Central Prison who told Plaintiff he would get it to the correct official.[3] [Id.].

On March 30, 2026, after Plaintiff was transferred to Alexander, Plaintiff submitted his third DC-746. [Id., Doc. 1-8]. In this request, Plaintiff sought "a better bed," a radio with a large LED screen, over the head ear phones, shoes with laces, a talking watch, a wheelchair, and to be allowed to keep his walker to use as able. [Doc. 1-8]. In support of these requests, Plaintiff complained that he cannot hear or see well; cannot sleep on the single mat; cannot walk, stand, lift, bend or work; and cannot be out of his wheelchair for very long. [Id.]. Defendant Rohlfing accepted and signed the request on April 2, 2026, and sent a letter to Plaintiff the same day acknowledging receipt and asking Plaintiff to "[p]lease be patient while it is under review." [Docs. 1-7, 1-8].

Pursuant to policy, ADA requests should be resolved within 45 days and must be completed within 60 days if an extension is obtained. [Doc. 1-5]. On April 16, 2026, only 23 days after

---

[2] Offenders use the DC-746 to make requests for accommodations for their disabilities.

[3] On May 18, 2026, Plaintiff filed a Complaint in the United States District Court for the Eastern District of North Carolina complaining about the lack of response to these DC-746 requests at Central Prison and his conditions of confinement there. Jones v. Central Prison et. al, 5:26-ct-03149-BO (E.D.N.C.), Doc. 1. Initial review of that Complaint remains pending.

Plaintiff's second request and 17 days after his third request (which was his first at Alexander), Plaintiff submitted a grievance complaining that he had not received the accommodations. [Doc. 1-10]. Plaintiff agreed with the Step One Unit Response, which explained that his March 30 request had been received by staff on April 2 and was still being reviewed. [Doc. 1-11].

Then, on May 16, 2026, 47 days after Plaintiff submitted his third DC-746, Plaintiff submitted a grievance complaining that he still had not received a response to this request and that his condition continues to get worse. [Doc. 1-13]. This grievance was accepted on May 18, 2026. [Doc. 1-12]. On May 28, 2026, Defendant Farrish issued the Step One Unit Response. [Doc. 1-14]. He wrote that, on April 24, 2026, the first step of the review process was completed when the Program Supervisor (presumably Defendant Rohlfing) and Mental Health Social Worker (presumably the "unknown" Defendant) reviewed the request. [Id.]. Defendant Farrish further noted that, on May 1, 2026, the Facility Associate Warden over Programs (presumably Defendant Jenkins) reviewed the request and then forwarded it to the Division ADA Manager for final review and decision. [Id.]. Defendant Farrish advised Plaintiff that the request, including the timeframe for a final decision, is outside of Farrish's control "[a]t this stage of the process." [Id.]. Defendant Farrish also noted that, on May 15, 2026, he had received one of the requests that Plaintiff had submitted while he was at Central Prison and that it was also in process. [Id.]. On May 28, 2026, Plaintiff appealed the grievance result to Step Two.[4] [Id.].

Plaintiff claims that Defendants violated his rights under the Americans with Disabilities

---

[4] Plaintiff signed the instant Complaint on June 10, 2026, and did not submit Step Two or Step Three grievances responses therewith. [Doc. 1 at 11; see Docs. 1-1 to 1-14]. Since filing his Complaint, Plaintiff filed the Step Two response to his grievance, which was issued on June 10, 2026, and which Plaintiff appealed to Step Three on June 16, 2026. [Doc. 6-1]. The Court, however, is constrained to overlook Plaintiff's apparent failure to exhaust administrative remedies on initial review. See Custis v. Davis, 851 F.3d 358, 362-63 (4th Cir. 2017).

Act ("ADA"), 42 U.S.C. § 12101, et seq., and the Eighth Amendment.[5]  [Id. at 3].  For injuries, Plaintiff claims worsening of his "back problems," including increased pain.  [Id. at 5].  He seeks monetary relief only.  [Id.].

## II.     STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2).  Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.  28 U.S.C. § 1915A.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios.  Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).  Furthermore, a pro se complaint must be construed liberally.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III.    DISCUSSION

### A.      ADA and Rehab Act

---

[5] The Court will address only those claims fairly raised by Plaintiff's Complaint, including here a claim under 504 of the Rehabilitation Act of 1973 ("Rehab Act"), which Plaintiff references in his Complaint. [See Doc. 1-4 at 1].

4

Under Title II of the ADA, "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. The ADA defines "public entity" to include "any State or local government" and "any department, agency, … or other instrumentality of a State." United States v. Georgia, 546 U.S. 151, 126 S.Ct. 877 (2006) (citing 42 U.S.C. § 12131(1)). "[T]his term includes state prisons." Id. (citing Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 210, 118 S.Ct. 1952 (1998)).

To establish a prima facie case under Title II of the ADA, a plaintiff must show that: (1) he has a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities for which he was otherwise qualified; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. Miller v. Hinton, 288 Fed. App'x 901, 902 (4th Cir. 2008) (citations omitted). States are obligated to make "reasonable modifications" to enable the disabled person to receive the services or participate in programs or activities. 42 U.S.C. § 12131(2). The duty of reasonable accommodation, however, must also consider whether the institution's actions are related to legitimate penological interests. See Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987); Tanney v. Boles, 400 F.Supp.2d 1027, 1050 (E.D. Mich. 2005) (noting that courts have applied Turner to ADA and Rehab Act claims). A plaintiff must also establish an actual injury from any alleged ADA or Rehab Act violation. See Rosen v. Montgomery Cty. Md., 121 F.3d 154, 158 (4th Cir. 1997).

The Rehabilitation Act provides that "no otherwise qualified individual with a disability … shall, solely by reason of [his] disability, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The analysis under the Rehab Act is generally the same

5

as under the ADA.  Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 214 (4th Cir. 2002). Claims under the Rehab Act, however, require a showing of discrimination "solely by reason of" disability, 29 U.S.C. § 794(a), while under the ADA, a plaintiff must only show discrimination "by reason of" disability, 42 U.S.C. § 12132.  As such, the causation standards are "significantly dissimilar."  Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 n.17 (4th Cir. 2005) (citation omitted).  In addition, to sustain a claim under the Rehab Act, a plaintiff must also show that the program or activity in question receives federal financial assistance. Thomas v. The Salvation Army Southern Territory, 841 F.3d 632, 641 (4th Cir. 2016).

Neither the Rehab Act nor Title II of the ADA, however, provide for individual capacity suits against state officials.  See Barnes v. Young, 565 Fed. App'x 272, 273 (4th Cir. 2014) (unpublished) (quoting Garcia v. S.U.N.Y. Health Sciences Ctr., 280 F.3d 98, 107 (2d Cir. 2001) (collecting cases)); see Baird v. Rose, 192 F.3d 462, 472 (4th Cir. 1999) (there is no ADA retaliation claim against defendants in their individual capacities); Moneyhan v. Keller, 563 Fed. App'x 256, 258 (4th Cir. 2014) ("Neither the ADA nor the Rehabilitation Act authorizes suits for monetary damages against Defendants in their individual capacities.") (citation omitted).  Such a suit, therefore, may only be brought against a defendant in an official capacity.  Id.  As such, Plaintiff's individual capacity ADA and Rehab Act claims will be dismissed for Plaintiff's failure to state a claim for relief.

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff has also failed to state a claim under the ADA or Rehab Act against any Defendant in their official capacities.  To begin, Plaintiff seeks monetary relief only, which is unavailable in an official capacity Rehab Act claim.  Sossamon v. Texas, 563 U.S. 277, 285-86 2011) (damages are not recoverable against defendants in their official capacities under RLUIPA);

Rendleman v. Rouse, 569 F.3d 182, 187 (4th Cir. 2009) ("RLUIPA does not authorize claims for money damages against an official who is sued in her official capacity").

Next, even assuming for the sake of argument that the denial of the accommodations sought by Plaintiff would violate the ADA or the Rehab Act, Plaintiff does not allege any such denial. He alleges only a relatively minor delay in receiving a response to his third ADA request.[6] Moreover, Plaintiff fails to allege facts against any Defendant that would make out these claims in any event. The materials attached to Plaintiff's Complaint show only that Defendant Rohlfing accepted Plaintiff's request, that Defendant Rohlfing and a Mental Health Social Worker, presumably the "unknown" Defendant, reviewed the request, that Defendant Jenkins, as Facility Associate Warden, reviewed the request and then forwarded it to the Division ADA Manager, who is not named as a defendant in this action, and that Defendant Farrish issued the Step One response to Plaintiff's April 16, 2026 and May 16, 2026 grievances. Because Plaintiff has failed to state claims under the ADA or the Rehab Act against any Defendant, the Court will dismiss these claims.

### B. Constitutional Claims

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law. See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. 166, 175 (2023).

### 1. Official Capacity Claims

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Michigan Dept. of State Police, 491 U.S.

---

[6] The Court does not address the first two requests, as they are the subject of Plaintiff's action in the Eastern District and involved individuals not named as defendants here.

7

58, 71 (1989). Because a state is not a "person" under § 1983, state officials acting in their official capacities cannot be sued for damages thereunder. Allen v. Cooper, No. 1:19-cv-794, 2019 WL 6255220, at *2 (M.D.N.C. Nov. 22, 2019). Furthermore, as noted the Eleventh Amendment bars suits for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003). Plaintiff's official capacity constitutional claims against the individual Defendants, therefore, do not survive initial review and will be dismissed.

### 2. Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, and protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement, Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "The Eighth Amendment 'does not prohibit cruel and unusual prison conditions.'" Thorpe v. Clarke, 37 F.4th 926, 940 (4th Cir. 2022) (quoting Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993)). "It asks instead whether the conditions of confinement inflict harm that is, objectively, sufficiently serious to deprive of minimal civilized necessities." Id. (citation omitted). "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment prohibition against cruel and unusual punishment." Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997). Extreme deprivations are required. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams, 77 F.3d at 761. The Supreme Court has stated that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows

8

of and disregards an excessive risk to inmate health or safety." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> A plaintiff must also allege "a serious or significant physical or emotional injury resulting from the challenged conditions." <u>Strickler v. Waters</u>, 989 F.2d 1375, 1381 (4th Cir. 1993).

To establish liability under 42 U.S.C. § 1983, a plaintiff "must affirmatively show that the official charged acted personally in the deprivation of [his] rights." <u>Williamson v. Stirling</u>, 912 F.3d 154, 171 (4th Cir. 2018) (cleaned up); <u>see</u> <u>Vinnedge v. Gibbs</u>, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted). Mere knowledge of a deprivation is insufficient. <u>Williamson</u>, 912 F.3d at 171.

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, he has nonetheless failed to state a claim against any Defendant for violation of his Eighth Amendment rights. The conditions alleged by Plaintiff, while uncomfortable, do not rise to the level of an extreme deprivation necessary to state an Eighth Amendment claim based on conditions of confinement. Moreover, Plaintiff's allegations fail to show that the individual Defendants were subjectively aware of an objectively "excessive risk to [Plaintiff's] health and safety." <u>See</u> <u>Farmer</u>, 511 U.S. at 837. As such, the Court will dismiss Plaintiff's Eighth Amendment conditions of his confinement claim against the Defendants in their individual capacities.

### 3. Redress of Grievances

"[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994). "An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance procedure." <u>Booker</u>

v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017). As such, to the extent Plaintiff complains about the denial of his grievances or the manner in which they have been processed, he has failed to state a claim.

Because Plaintiff has failed to state a claim for relief, Plaintiff's Complaint fails initial review, and the Court will dismiss it without prejudice. The Court, however, will allow Plaintiff to amend his Complaint to state a claim for relief, if Plaintiff so chooses.

Plaintiff is admonished that if he files an amended Complaint in this matter, he must properly name the Mental Health Social Worker Defendant. That is, until he learns this Defendant's identity, he must name them as John or Jane Doe, as appropriate.

## IV. PLAINTIFF'S LETTERS

Also before the Court are two letters Plaintiff directed to the Clerk of Court in which he purports to update the Court on events that transpired since he mailed his Complaint and with which he purports to submit "exhibits" in support of his case. [Docs. 6, 7 (with exhibits)]. The Court will strike these improper letters. As Plaintiff was advised in the Standing Order of Instructions in this matter, "[l]etters sent to the Clerk of Court or Judge will not be answered. Only Motions will be ruled on by the Court." (Standing Order, ¶ 5; see id. at ¶ 4 ("Only documents properly filed with the Clerk of Court will be docketed in this case.") & ¶ 8 ("Premature, misdirected, or otherwise improper filings will not be permitted.")). Should Plaintiff seek any particular relief from the Court, he must file a proper motion. Moreover, should Plaintiff wish to supplement his Complaint with events that have transpired since he filed it, he should include all claims he intends to bring against all Defendants he intends to sue, as appropriate, in his amended Complaint.

**Plaintiff is strongly cautioned to carefully review the Standing Order of Instructions,**

10

**the Local Rules of this Court, and the Federal Rules of Civil Procedure before filing any further documents with this Court. Any future improper filings may be summarily dismissed and/or stricken from the record.**

## V.    CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's Complaint fails initial review and will be dismissed without prejudice. The Court will allow Plaintiff thirty (30) days to amend his Complaint, if he so chooses, to properly state a claim upon which relief can be granted in accordance with the terms of this Order. Any amended complaint will be subject to all timeliness and procedural requirements and will supersede the Complaint. Piecemeal amendment will not be permitted. Should Plaintiff fail to timely amend his Complaint in accordance with this Order, the Court will dismiss this action without prejudice.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Complaint fails initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B) for Plaintiff's failure to state a claim for relief and shall be **DISMISSED WITHOUT PREJUDICE** in accordance with the terms of this Order.

**IT IS FURTHER ORDERED** that Plaintiff shall have thirty (30) days in which to amend his Complaint in accordance with the terms of this Order. If Plaintiff fails to so amend his Complaint, the matter will be dismissed without prejudice.

**IT IS FURTHER ORDERED** that Defendants Jenkins, Farrish, Rohlfing, and FNU LNU are hereby **DISMISSED** as Defendants in this matter.

The Clerk is respectfully instructed to mail Plaintiff a blank prisoner § 1983 form.

**IT IS SO ORDERED**.

Signed: July 13, 2026

Frank D. Whitney
Senior United States District Judge