**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**5:26-cv-00135-FDW**

| | | |
|---|---|---|
| **HENRY ALBERT JONES,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**AMY JENKINS, et al.**<br><br>**Defendants.** | ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on initial review of Plaintiff's Amended Complaint [Doc. 11]. See 28 U.S.C. §§ 1915(e) and 1915A. Plaintiff is proceeding in forma pauperis. [Docs. 1, 5].

## I. BACKGROUND

Pro se Plaintiff Henry Albert Jones ("Plaintiff") is a prisoner of the State of North Carolina currently housed at Alexander Correctional Institution ("Alexander") in Taylorsville, North Carolina. On June 17, 2026, he filed this action against Defendants: (1) Amy Jenkins, Associate Warden of Programs at Alexander; (2) FNU Farrish, Unit Supervisor at Alexander; (3) FNU Rohlfing, Program Supervisor at Alexander; and (4) an "unknow[n]" Mental Health Social Worker at Alexander. [Doc. 1]. Plaintiff sued the Defendants in their individual and official capacities. [Id. at 2-3]. Plaintiff sought to state claims that Defendants violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and the Eighth Amendment based on the alleged failure to accommodate his disabilities. [Id. at 3]. Plaintiff's Complaint failed initial review as further set forth in the Court's Order. [Doc. 8]. The Court, however, allowed Plaintiff to file an amended Complaint to properly state a claim for relief. [Id. at 11].

Now pending for initial review is Plaintiff's Amended Complaint. [Doc. 11]. In his Amended Complaint, Plaintiff again names Jenkins, Farrish, Rohlfing, and the Mental Health Social Worker, whom Plaintiff now identifies as Beulah G. Coley, as Defendants. [Id. at 2-3; Doc. 11-1 at 1]. Plaintiff also now names Sophia Feaster, identified as the Divisional ADA Coordinator, and FNU Hensley, identified as a Unit Case Manager, as Defendants. [Doc. 11 at 2; Doc. 11-1 at 1]. Plaintiff sues Defendants in their official capacities only. [Id. at 2-3; Doc. 11-1 at 1].

Plaintiff appears to allege as follows.

Plaintiff cannot hear or see "well." He is unable to walk, stand, lift, bend, or work and cannot be out of a wheelchair for a long time. [Doc. 11-1 at 6-7]. From October 2021 to November 2025, Plaintiff was detained at the Stokes County Jail. [Doc. 11 at 4; Doc. 11-1 at 6].

On February 12, 2026, while at Central Prison in Raleigh, North Carolina, Plaintiff filed his first ADA request using the DC-746 Form.[1] [Doc. 11-1 at 6]. Plaintiff was later told that this first request was lost. [Id.]. On March 24, 2026, while still at Central Prison, Plaintiff submitted a second ADA request using the DC-746 Form by giving it to Mr. Todd, a case worker, who told Plaintiff he would get it to the right person.[2] [Id.].

On March 30, 2026, Plaintiff was transferred to Alexander, where he was told to complete another DC-746. In this third ADA request, Plaintiff requested a better sleeping mat, a radio with large LED screen, over the head earphones, shoes with laces, a talking watch, a wheelchair, and to

---

[1] Offenders use the DC-746 to make requests for accommodations for their disabilities.

[2] To the extent Plaintiff purports to seek relief based on events transpiring in the Stokes County Jail or at Central Prison, the Court is without authority to address those matters and any such claims are dismissed. Moreover, as previously noted, on May 18, 2026, Plaintiff filed a Complaint in the United States District Court for the Eastern District of North Carolina complaining about the lack of response to these DC-746 requests at Central Prison and his conditions of confinement there. Jones v. Central Prison et. al, 5:26-ct-03149-BO (E.D.N.C.), Doc. 1. Initial review of that Complaint remains pending.

be allowed to keep his walker to use for able matters. [Id.]. From March 30, 2026 to the present, "All Parties … were aware of [Plaintiff's] medical status But denied the Disability of 5 pinched nerves, multiple sclerosis, vertabra that are Fusing together, leaking of Spinal Fluid, neuropathy in both legs and 7 to 8 missing Disc's in [Plaintiff's] lower back." [Doc. 11-1 at 5 (errors uncorrected)]. Plaintiff's conditions have deteriorated due to his living conditions and "deliberate [r]etaliation." [Id.].

On April 2, 2026, Defendant Rohlfing sent Plaintiff a notice asking for Plaintiff's patience as they reviewed "the issues." [Id. at 7]. On April 16, 2026, Plaintiff's third request remained under review. [Id.]. Plaintiff's physical and mental health continued to deteriorate as he awaited a response. [Id.].

Sometime on or before May 1, 2026, Defendants Rohlfing and Coley reviewed Plaintiff's third ADA request. [See id. at 8]. On May 1, 2026, Defendant Farrish wrote that Defendant Jenkins had reviewed the request and forwarded it to Defendant Feaster for final review and decision.[3] [Id. at 8].

On May 16, 2026, Plaintiff submitted a grievance regarding the lack of response to or accommodations granted under his third request. [Id.]. On May 28, 2026, Defendant Farrish issued a Step One Unit Response to Plaintiff's grievance. [Id. at 8]. Plaintiff appealed this response to Step Two the same day. [Id. at 9]. At some time before Defendant Jenkins recommended denial of Plaintiff's third request, a Case Manager, presumably Defendant Hensley, recommended that the request be denied. The Case Manager noted that the Plaintiff has a hearing acuity score of 1 and an eyes acuity score of 1 and concluded that Plaintiff's "other requests are

---

[3] This allegation appears to relate to a grievance not otherwise referenced by the Plaintiff. Of note, the materials submitted by Plaintiff with his Amended Complaint reflect that Defendant Jenkins recommended denial of the third request on May 29, 2026. [Doc. 11-1 at 4].

not reasonable accommodations that can be provided." [Doc. 11-1 at 4].

On June 8, 2026, Defendant Feaster issued the final decision, denying Plaintiff's third request. [Doc. 11-1 at 4]. She explained:

> OFFENDER'S REQUESTS ARE NOT GRANTED. OFFENDER WOULD NEED TO SPEAK WITH CORRECTIONAL CASE MANAGER, MEDICAL AND UNIT MANAGER FOR "ROOM WITH REAL BED, HIGHER TOILET, BETTER SINK[.]" OFFENDER'S REQUEST FOR "OVER THE EAR HEADPHONE, RADIO, TALKING WATCH" ARE NOT GRANTED. OFFENDER WOULD NEED TO SPEAK WITH MEDICAL FOR UPDATED HEARING AND EYE EXAMINATIONS.

[Doc. 11-1 at 4]. On June 16, 2026, after Plaintiff mailed the original Complaint in this matter, Plaintiff appealed the Step Two response to Step Three. [Id.].

Plaintiff purports to assert claims under the Eighth and Fourteenth Amendments, as well as under numerous provisions that afford no right to or basis for relief.[4] [Doc. 11-1 at 3; see id. at 2-3]. For injuries, Plaintiff claims having suffered mental and physical abuse, severe pain, and psychological and emotional trauma. [Id. at 10; Doc. 11-1 at 12]. Plaintiff seeks monetary relief and various accommodations, including a taller toilet, thicker bed mats, a handicap cell with pull up rails, a wheelchair, a radio with large LED screen, over-the-head earphones, a talking watch, and to maintain his walker. [Id. at 12].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under

---

[4] The Court will address only those claims fairly raised by Plaintiff's Complaint. Any claims not specifically addressed herein are dismissed for Plaintiff's failure to state a claim for relief.

§ 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915A.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

### A. ADA and Rehab Act

Under Title II of the ADA, "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. The ADA defines "public entity" to include "any State or local government" and "any department, agency, … or other instrumentality of a State." United States v. Georgia, 546 U.S. 151, 126 S.Ct. 877 (2006) (citing 42 U.S.C. § 12131(1)). "[T]his term includes state prisons." Id. (citing Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 210, 118 S.Ct. 1952 (1998)).

To establish a prima facie case under Title II of the ADA, a plaintiff must show that: (1) he has a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities for which he was otherwise qualified; and (3) such

exclusion, denial of benefits, or discrimination was by reason of his disability. Miller v. Hinton, 288 Fed. App'x 901, 902 (4th Cir. 2008) (citations omitted). States are obligated to make "reasonable modifications" to enable the disabled person to receive the services or participate in programs or activities. 42 U.S.C. § 12131(2). The duty of reasonable accommodation, however, must also consider whether the institution's actions are related to legitimate penological interests. See Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987); Tanney v. Boles, 400 F.Supp.2d 1027, 1050 (E.D. Mich. 2005) (noting that courts have applied Turner to ADA and Rehab Act claims). A plaintiff must also establish an actual injury from any alleged ADA or Rehab Act violation. See Rosen v. Montgomery Cty. Md., 121 F.3d 154, 158 (4th Cir. 1997).

The Rehabilitation Act provides that "no otherwise qualified individual with a disability … shall, solely by reason of [his] disability, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The analysis under the Rehab Act is generally the same as under the ADA. Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 214 (4th Cir. 2002). Claims under the Rehab Act, however, require a showing of discrimination "solely by reason of" disability, 29 U.S.C. § 794(a), while under the ADA, a plaintiff must only show discrimination "by reason of" disability, 42 U.S.C. § 12132. As such, the causation standards are "significantly dissimilar." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 n.17 (4th Cir. 2005) (citation omitted). In addition, to sustain a claim under the Rehab Act, a plaintiff must also show that the program or activity in question receives federal financial assistance. Thomas v. The Salvation Army Southern Territory, 841 F.3d 632, 641 (4th Cir. 2016).

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff has failed to state a claim under Rehab Act against any Defendant. Plaintiff

fails to allege that any program or activity under which he was allegedly discriminated against received Federal financial assistance. See 29 U.S.C. § 794(a). As such, to the extent Plaintiff sought relief under the Rehab Act, he has failed to state a claim for relief. The Court will dismiss this claim.

As for a claim under the ADA, taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff has failed to state a claim for relief against Defendants Rohlfing, Coley, or Farrish. That is, Plaintiff alleges only that Defendants Rohlfing and Coley reviewed Plaintiff's third ADA request and that Defendant Farrish, apparently in response to Plaintiff's grievance, indicated that Defendant Jenkins had reviewed Plaintiff's request and forwarded it to Defendant Feaster for final review and decision. These allegations are plainly insufficient to make out a claim under the ADA. The Court, therefore, will dismiss Plaintiff's ADA claim against Defendants Rohlfing, Coley and Farrish. The Court will, however, allow Plaintiff's official capacity ADA claim against Defendants Jenkins, Feaster, and Hensley to pass initial review as not clearly frivolous.

**B. Constitutional Claims**

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law. See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. 166, 175 (2023).

**1. Official Capacity Claims**

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Michigan Dept. of State Police, 491 U.S.

58, 71 (1989). Because a state is not a "person" under § 1983, state officials acting in their official capacities cannot be sued for damages thereunder. Allen v. Cooper, No. 1:19-cv-794, 2019 WL 6255220, at *2 (M.D.N.C. Nov. 22, 2019). Furthermore, as noted the Eleventh Amendment bars suits for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003). Plaintiff names the Defendants in their official capacities only. As such, to the extent Plaintiff seeks money damages, his constitutional claims against the individual Defendants necessarily fail initial review and will be dismissed.

**2. Eighth Amendment**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, and protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement, Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "The Eighth Amendment 'does not prohibit cruel and unusual prison conditions.'" Thorpe v. Clarke, 37 F.4th 926, 940 (4th Cir. 2022) (quoting Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993)). "It asks instead whether the conditions of confinement inflict harm that is, objectively, sufficiently serious to deprive of minimal civilized necessities." Id. (citation omitted). "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment prohibition against cruel and unusual punishment." Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997). Extreme deprivations are required. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams, 77 F.3d at 761. The Supreme Court has stated that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows

of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. A plaintiff must also allege "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993).

To establish liability under 42 U.S.C. § 1983, a plaintiff "must affirmatively show that the official charged acted personally in the deprivation of [his] rights." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (cleaned up); see Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted). Mere knowledge of a deprivation is insufficient. Williamson, 912 F.3d at 171.

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, he has nonetheless failed to state a claim against any Defendant for violation of his Eighth Amendment rights. The conditions alleged by Plaintiff, while uncomfortable, do not rise to the level of an extreme deprivation necessary to state an Eighth Amendment claim based on conditions of confinement. Moreover, Plaintiff's allegations fail to show that the individual Defendants were subjectively aware of an objectively "excessive risk to [Plaintiff's] health and safety." See Farmer, 511 U.S. at 837. Rather, Plaintiff alleges only that "all parties" were aware of his "medical status." As such, the Court will dismiss Plaintiff's Eighth Amendment conditions of his confinement claim.

### 3. Retaliation

An inmate has a clearly established First Amendment right to be free from retaliation for filing lawsuits. See Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 540 (4th Cir. 2017); Thompson v. Commonwealth of Va., 878 F.3d 89, 110 (4th Cir. 2017). Inmates also have a protected First

Amendment right to complain to prison officials about prison conditions and improper treatment by prison employees that affect them. See Patton v. Kimble, 717 Fed. App'x 271, 272 (4th Cir. 2018).

To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (quotation marks and citation omitted). The causation element "requires that a plaintiff plausibly allege that the defendants were aware of the plaintiff's engaging in a protected activity and show some degree of temporal proximity to suggest a causal connection." Gowen v. Winfield, 130 F.4th 162, 173 (2025) (cleaned up).

Retaliation claims brought by prisoners are treated with skepticism because every act of discipline by a prison official is retaliatory in that it responds directly to prisoner misconduct. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). More, bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim. Id., 40 F.3d at 74.

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, he has plainly failed to state a claim against any Defendant for retaliation. He makes only a conclusory allegation of "deliberate retaliation" causing further deterioration of his physical condition. Thus, to the extent Plaintiff purported to state such a claim, he has failed and the Court will dismiss it.

**IV. CONCLUSION** In sum, Plaintiff's official capacity ADA claim against Defendants Jenkins, Feaster, and Hensley survives initial review. The Court will dismiss Plaintiff's remaining claims, which fail initial review, and the remaining Defendants.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's official capacity ADA claim against Defendants Jenkins, Feaster, and Hensley passes initial review in accordance with the terms of this Order. Plaintiff's remaining claims are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendants Rohlfing, Coley, and Farrish are hereby **DISMISSED** as Defendants in this matter.

**IT IS FURTHER ORDERED** that Clerk of Court shall commence the procedure for waiver of service as set forth in Local Civil Rule 4.3 for Defendants Jenkins, Feaster, and Hensley, who are alleged to be current or former employees of the North Carolina Department of Adult Correction.

The Clerk is also instructed to mail Plaintiff an Opt-In/Opt-Out form pursuant to Standing Order 3:19-mc-00060-FDW.

**IT IS SO ORDERED**.

Signed: August 13, 2026

Frank D. Whitney
Senior United States District Judge